# In the United States Court of Federal Claims

No. 17-667L
(Filed: September 18, 2018)

|  |  |  |
|---|---|---|
| | ) | |
| WILLIAM R. BUTLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Rails-to-Trails; Indiana Law, Easement |
| v. | ) | Versus Fee; Deed Interpretation; |
| | ) | Summary Judgment. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Thomas S. Stewart,* Kansas City, MO, for plaintiffs. *Elizabeth G. McCulley,* Kansas City, MO, *Steven M. Wald* and *Michael J. Smith*, St. Louis, MO, of counsel.

*Tyler Lynne Burgess*, Trial Attorney*, Environment and Natural Resources Division, Natural Resources Section, U.S. Department of Justice, Washington, DC, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, Washington, DC, for defendant. *Daniel Pinkston,* Denver, CO, of counsel.

## OPINION ON CROSS MOTIONS
## FOR PARTIAL SUMMARY JUDGMENT

**FIRESTONE**, *Senior Judge*.

Pending before the court in the above-captioned rails-to-trails case are cross

motions for partial summary judgment filed pursuant to Rule 56 of the Rules of the

United States Court of Federal Claims ("RCFC"). Most of the claims have been resolved

by the parties. This opinion addresses only the claims of plaintiffs Ivan Bender Farm,

Inc., Lockwood Farms, LLC, Frank D. Riley, Janet Schapker now known as Janet

Johnson, Effinger Estate, and the Irene G. Siebert Trust and the Joseph E. Seibert Trust

(hereafter "plaintiffs").  The plaintiffs and the United States ("government") could not agree as to whether the deeds discussed in this opinion can be read to give plaintiffs' possible temporary takings claims.[1]

The plaintiffs own land in Posey and Vanderburgh Counties, Indiana.  They claim that they are entitled to compensation under the Tucker Act, 28 U.S.C. § 1491, and the Fifth Amendment based on the issuance of a Notice of Interim Trail Use ("NITU") by the Surface Transportation Board ("STB") under the National Trails Systems Act, as amended, 16 U.S.C. § 1247(d) ("the Trails Act") for a possible trail in Posey and Vanderburgh Counties, Indiana.  The NITU prohibited the Indiana Southwestern Railway Company ("ISW") from abandoning a portion of ISW's railroad right-of-way to allow for negotiations to create a trail to be operated by the Town of Poseyville and the Indiana Trails Fund Inc.  A trail use agreement between the Town of Poseyville and the Indiana Trails Fund was never finalized.  The NITU was in place from May 23, 2011 until November 8, 2013.[2]

As noted at the outset, the government and plaintiffs have resolved the following claims and agree the below listed plaintiffs have a potential temporary taking right to compensation: Claims 1A and 1B (Estate of Jean Bender), Claim 2 (William Bender, Robert Bender, and Christopher), Claim 3 ( Donald Blackenberger), Claim 4 (William R.

---

[1] These plaintiffs are associated with the following claims: Claim 6 (Estate of Verlin Effinger), Claim 11 (Bender Farm), Claims 16A and 16B (Lockwood Farms, LLC), Claim 23 (Frank D. Riley), Claim 24 (Janet Schapker) and Claim 33 (Seibert Trust).

[2] This same NITU is the subject of separate litigation involving different landowners with property adjacent to the right-of-way.  *See Memmer v. United States*, Nos. 2016-2150 and 2016-2230, 2017 WL 6345843 (Fed. Cir. Nov. 16, 2017).  That case is now on remand to the trial court to address whether plaintiffs can establish a temporary taking for the period of time the NITU was in effect.  *Id.*

Butler), Claims 5A and 5B (Suzanne J. Curry, Wayne T Wiggins, and John R. Wiggins),

Claim 7 (Sylvester J. Elpers Revocable Trust of 2000 and Patricia A. Elpers Revocable

Trust of 2000), Claim 8 (F & M Damm Trust), Claim 9 (Barry Dean Gaslin), Claims 10A

and 10B (Gries Revocable Trust of 1995 and Rita A. Gries Revocable Trust of 1995),

Claims 12A and 12B (William D Knight and Mary Jane Knight Revocable Trust of

2008), Claims 13A and 13B (Rita Kissel and Adam Leo Kissel Revocable Trust

Agreement), Claims 14C, 14D, and 14E (Eugene Kuehn), Claim 15 (David Lipking),

Claim 17A and 17B (William Luigs), Claim 18 (Bruce K. Martin), Claim 19 (Poseyville

Development LLC)[3], Claims 20A and 20B (Robert Reuter), Claim 21(Kenneth Rexing,

Allen Rexing, Rita Ann Griffith and Michael J. Rexing), Claims 22A and 22B (Kenneth

Rexing, Rita Rexing, Dainel J. Rexing, Kristina Hickson f/k/a Kristina Rexing, Scott

Straub and Kendra Straub), Claim 26 (Martha Scheller), Claim 27A and 27B (Stephen

Schenk), Claim 28 (Dorothy Shmitt), Claims 29A and B (Family Trust created under the

Last Will and Testament of Francis E. Schmitt), Claim 30 (John O. Schmitt and Debra M.

Schmitt), Claims 31A and 31B (Glen and Brandon Seibert), Claim 34 (Harold Straub),

Claim 35 (Tenbarge Oil)[4], Claim 36 (Vogel Farm LLC), Claim 37 (Watzlavik Properties

LLC), Claim 38 (Leo B. Will and Mary Jeanette Will Joint Life Estate), Claim 39

---

[3] At oral argument, the government represented as to Claim 19 (Poseyville Development LLC), that if the court rejected the claim based on the Effinger Estate then Poseyville Development LLC would have a potential temporary takings claim. Transcript of March 9, 2018 Oral Argument at 19.

[4] Initially, the government maintained that Tenbarge Oil's, taxlot number 65-23-19-100-058.00-012, claim should be dismissed because it did not own the property in question.  After reviewing the map in question the government does not now contest that Tenbarge Oil has a potential temporary takings claim.

(Wayne Wiggins and Jacklyn Wiggins). Transcript of March 9, 2018 Oral Argument at 18-19.

The parties further agree that the plaintiffs with the following claims:  Claims 14A and 14B (Eugene Kuehn), Claim 25 (Stan Schapker), Claim 32 (Seibert Farms), and Claim 33 (Seibert Trust)[5] cannot maintain a temporary takings claim.  *Id.* at 4.

For the reasons discussed below, the plaintiffs' cross-motion for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART** and the government's motion for partial summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    Rails-to-Trails Act and Background Legal Principles

### A.  Rail-to-Trails Act

The statutory and legal backdrop to rails-to-trails cases was recently summarized by the Federal Circuit in *Chicago Coating Co., LLC v. United States*, 892 F.3d 1164, 1165-67 (Fed. Cir. 2018).  As the Federal Circuit explains, under the Trails Act, the STB has issued regulations regarding the abandonment and discontinuance of service over railroad lines.  *Id. referencing* 49 C.F.R. §§ 1152.1–1152.60.  A railroad, to abandon or discontinue service over a rail line, must file an application for abandonment or discontinuance with the STB under 49 U.S.C. § 10903 or a notice of exemption under 49 U.S.C. § 10502 and 49 C.F.R. § 1152.50.

---

[5] With regard to the Seibert Trust the plaintiffs argue that because only part of the property abuts a deed that conveyed a fee to the railroad it is premature to grant summary judgment as to only a portion of the claim until the boundaries are determined.

Under either procedure, the STB will not approve the abandonment of the railroad line if a qualified trail provider ("a [s]tate, political subdivision, or qualified private organization") submits a request to the STB to use the rail corridor for interim trail use and railbanking under 16 U.S.C. § 1247(d) ("section 1247(d)"). *See* 49 U.S.C. § 1152.29.  If the qualified trail provider submits a statement of willingness to assume financial and legal responsibility to the STB and the railroad carrier, the STB will, in situations involving an operating railroad, issue a Certificate of Interim Trail Use or Abandonment ("CITU"), which preserves the STB's jurisdiction over the railroad corridor while the parties negotiate an interim trail use agreement.  49 C.F.R. § 1152.29(c).

In situations involving the exemption procedure, the STB will issue a Notice of Interim Trail Use ("NITU"), which also preserves the STB's jurisdiction over the railroad corridor, allows the railroad to discontinue its operations, permits the railroad to remove equipment and railroad track, and provides the railroad and the qualified trail provider 180 days to negotiate an interim trail use agreement.  49 C.F.R. § 1152.29(d).  During this time, the railroad will also negotiate an agreement for the transfer of the rail corridor to the trail operator.  If an agreement is reached, the CITU or NITU automatically authorizes the interim trail use.  If the STB takes no further action, the trail sponsor may then assume management of the former railroad corridor, subject only to the right of a railroad to reassert control of the property for the restoration of rail service.  If, on the other hand, an agreement is not reached, the railroad will be allowed to abandon the railroad line, at which time the STB's jurisdiction over the railroad corridor terminates.

Section 1247(d) provides that interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d).

### B.  Background Legal Principles

Under the Takings Clause of the Fifth Amendment, private property cannot "be taken for public use, without just compensation." U.S. Const. Amend. V. According to the Federal Circuit, "[i]t is settled law that a Fifth Amendment taking occurs in Rails–to–Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010), *reh'g denied*, 646 F.3d 910 (Fed. Circ. 2011).  *See also Chicago Coating*, 892 F.3d at 1167, 1170.

Specifically, a Fifth Amendment taking occurs when "the issuance of the CITU or NITU authorizing recreational trail use effectively extinguishes the state property rights of reversion of the right-of-way to the fee owner." *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 718 (2011).  *See also Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004) ("a Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." (citation omitted)); *Chicago Coating*, 892 F.3d at 1169-70 ("In order to prove a compensable taking based on the issuance of a NITU, a claimant must prove that 'state law reversionary interests [in the property at issue] are

effectively eliminated in connection with a conversion of a railroad right-of-way to trail use.'" (quoting *Caldwell*, 391 F.3d at 1228)).

Determining whether taking liability arises in a rails-to-trails case involves addressing a three-part inquiry: "(1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement)." *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) ("*Preseault II*")). *See also Chicago Coating*, 892 F.3d at 1169. Thus, in rails-to-trails cases, "the threshold question is whether the claimant has a compensable property interest in the land allegedly taken, which is often answered by analyzing the original deeds that conveyed the property to the railroad." *Chicago Coating*, 892 F.3d at 1170 (citation omitted).

In addition to the threshold issues identified above, when a NITU is issued but a trail agreement is not finalized, the court must determine whether a temporary taking has occurred. The Federal Circuit in *Ladd*, 630 F.3d at 1023, had held that in cases where there is not a final trail use agreement there can be a temporary taking and right to compensation. Recently, the Federal Circuit, in *Caquelin v. United States,* 697

7

Fed.Appx. 1016, 1019 (Fed. Cir. 2017), questioned whether *Ladd* is correct in light of the multi-factor analysis test adopted by the Supreme Court in *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23, 38-40 (2012).  Until the Federal Circuit resolves its standard, to determine a temporary taking the court must now examine the multi-factor test established in *Arkansas Game & Fish Commission*.

## II.    Factual Background

### A.    The NITU

On October 25, 2010 the ISW filed an application to abandon a 17.2 mile segment of rail line in Posey and Vanderburgh Counties, Indiana pursuant to 49 C.F.R. §1152.50. Def.'s Mot for Partial Summ. J, ("Def.'s Mot.") at 8, Ex. 1.  The application covered two segments: (1) a segment from milepost 227.5 at Poseyville, Indiana to milepost 240.2 near German Township Indiana, which is approximately 12.7 miles and (2) a segment from milepost 277.5 at Cynthiana, Indiana to milepost 282.0 at Poseyville, Indiana, which is approximately 4.5 miles.  *Id.*

The STB granted the NITU on April 8, 2011.  The NITU became effective on May 23, 2011 and the negotiating period concluded on November 19, 2011.  *Id*. at 11, Ex. 7. After four extensions, the NITU expired on November 8, 2013. *Id*. at 11-12, Exs. 11-15.

### B.    The Claims and Deeds in Dispute

#### 1.    Bender Farm's Claim and Montgomery Deed

The Bender Farm claim turns on a proper reading of the Montgomery Deed.  On March 4, 1882 Andrew and Annie Montgomery executed the following deed which was entitled "Right of Way Deed:"

Know all men by these presents that Andrew Montgomery and Annie P. Montgomery of Posey County, State of Indiana, for and in consideration of the benefits to be derived from the construction of the Evansville & Terre Haute Railroad in Posey County, State of Indiana, and for the further consideration of One Hundred Dollars, in hand paid, the receipt of which is hereby acknowledged, do grant, warrant and convey to the said Evansville & Terre Haute Railway Company, of Indiana, its successors and assigns, a strip of land eighty feet in width, being a strip forty feet wide, on each side of the centerline of said railroad as it now is located through his land in Posey County, State of Indiana, described as follows to wit: a strip of land eighty feet wide, being a strip forty feet in width on each side of the centerline of the right-of-way as shown by the survey of said company in the west half of the southeast quarter and the southeast quarter of the southwest quarter of Section nine (9) Township four (4) south Range twelve (12) west and the said Andrew Montgomery hereby reserves all the timber on said right-of-way for his own use and benefit and that said R.R. Co. shall make one good farm crossing for the benefit of said Montgomery and all necessary outlets for water.  In testimony whereof, the said Andrew Montgomery and Annie P. Montgomery have hereto set their hands and seal this 4th day of March, 1882.
Witnessed by Andrew Montgomery Annie P. Montgomery

Pls.' Mot. for Partial Summ. J. ("Pls.' Mot."), Ex. C.

## 2.    Lockwood Farms' Claims and Calvert Deed

The Lockwood Farms' claims turn on a proper reading of the Calvert deed.  On

March 1, 1882 James and F.M. Calvert executed the following deed which was entitled

"Right of Way Deed:"

Know all men by these presents, that James G. Calvert and F. M. Calvert of Posey County, State of Indiana, for and in consideration of the benefits to be derived from the construction of the Evansville& Terre Haute Railroad in Posey County, State of Indiana, and for the further consideration of One Hundred Dollars, in hand paid, the receipt of which is hereby acknowledged, do grant, warrant and convey to the said Evansville & Terre Haute Railway

Company, of Indiana, its successors and assigns, a strip of
land eighty feet in width, being a strip forty feet wide, on
each side of the centerline of said railroad as it now is located
through his land in Posey County, State of Indiana, described
as follows to wit: it being a strip of land eighty feet wide
commencing at or near the NE corner of the NW quarter of
the NW quarter of section sixteen (16) in township four (4)
south, range twelve (12) west and running out on the west
side of said quarter quarters of said Section, Township, Range
and it is further agreed that said railroad shall make one good
crossing for the use and benefit of the said James G. Calvert
also all necessary outlets for water together with a good seven
strand wire fence over the southside of said right-of-way.  In
testimony whereof, the said James G. Calvert and F.M.
Calvert have herewith set their hands and seal this 1st day of
March 1882.  Witness by. James G. Calvert F. M. Calvert
State of Indiana, Posey County, as: Before me a notary public
in and for said county and state this 1st day of March 1882
personally came James G. Calvert and F.M. Calvert and
acknowledged the execution of the foregoing deed.

Pls.' Mot., Ex. A.

### 3.      Riley Claim and Cale Deed

The Riley claim turns on a proper reading of the Cale Deed.  On March 18, 1882

James and Jane Cale executed the following deed which was entitled "Right of Way

Deed:"

Know all men by these presents that James Cale and Jane
Cale of Posey County, State of Indiana, for and in
consideration of the benefits to be derived from the
construction of the Evansville & Terre Haute Railroad in
Posey County, State of Indiana, and for the further
consideration of One Hundred and Fifty Dollars, in hand paid,
the receipt of which is hereby acknowledged, do grant,
warrant and convey to the said Evansville & Terre Haute
Railway Company, of Indiana, its successors and assigns, a
strip of land sixty-six feet in width, being a strip thirty-three
feet wide, on each side of the centerline of said railroad as it
now is located through his land in Posey County, State of
Indiana, described as follows to wit: being a strip thirty-three

10

feet wide, over the east side of the centerline of the right-of
way as shown by the survey made by said company through
the NE quarter of Section 19 Township 4 Range 12 west from
the point where said survey strikes the north line of said land
to the land owned by E. E. Fairchild and a strip on the west
side of said centerline commencing at the said north line of
the above named quarter and Section. Thirty-three feet wide
for a distance of 19 rods south from thence a strip 47 feet
wide for a distance of one hundred feet south and from thence
to the land owned by said E.E. Fairchild a strip thirty-three
feet wide. In testimony whereof, the said James Cale and Jane
Cale have hereto set their  hand and seal this 18th day of
March, 1882.  Witnessed by James Cale Jane Cale.

Pls.' Mot., Ex. D.

### 4.      Janet Shapker Claim and the Fairchild Deed

The Janet Shapker claim turns on a proper reading of the Fairchild Deed.  On May

29, 1882 E.E. Fairchild, S.S. Fairchild, F.H. Fairchild, and Mary Fairchild executed the

following deed which was entitled "Right of Way Deed:"

> Know all men by these presents; that E. E. Fairchild, S.S.
> Fairchild, his wife and F.N. Fairchild and Mary Fairchild, his
> wife, of Posey County, State of Indiana, for and in
> consideration of the benefits to be derived from the
> construction of the Evansville & Terre Haute Railroad in
> Posey County, State of Indiana, and for the further
> consideration of Two Hundred Dollars, in hand paid, the
> receipt of which is hereby acknowledged, do grant, warrant,
> and convey to the said Evansville & Terre Haute Railway
> Company, of Indiana, its successors and assigns, a strip of
> land sixty-six feet in width, being a strip thirty-three feet
> wide, on each side of the center of said right-of-way of said
> railroad as it now is located through his land in Posey County,
> State of Indiana, described as follows to wit: it being a strip
> sixty-six feet wide as the line of said railroad is now located
> through the following described piece or parcel of land to wit:
> commencing at the intersection of section line 19 & 20
> Township (4) south Range Twelve (12) west with the P.D. &
> E. R. R. and running thence north 26 rods or thereabouts
> thence south 13 rods or thereabouts, thence in a southeasterly

11

> direction along the line of the right-of-way of said P.D. &
> E.R.R. to the place of beginning containing three acres and
> fifty four rods more or less. In testimony whereof, the said
> E.E. Fairchild, S.S. Fairchild, F.H. Fairchild and Mary
> Fairchild have hereunto set their hands and seal this 29th day
> of May, 1882.

Pls.' Mot., Ex. B.

### 5.    The Effinger Estate Claim and Williams Deed

The Effinger Estate claim turns on a proper reading of the 1884 Williams deed.

On September 23, 1884, LeRoy and Eliza E. Williams executed the following deed:

> This instrument witnesseth, that LeRoy Williams and Eliza E.
> Williams his wife of Posey County, Indiana, for an in
> consideration of the sum of one dollar ($1.00) convey and
> warrant to the Evansville and Terre Haute Rail Road
> Company all their right title and interest in and to the
> following described real estate situated in the County of
> Posey and State of Indiana, viz: Beginning at the North East
> corner of Lot No. Five (5) Williams First Addition to the
> town of Poseyville and running from thence due East sixty-
> six feet; and running from thence due South one hundred and
> thirty-two fee, returning from thence due West sixty-six feet
> (66), running from thence due North One hundred thirty-two
> feet to the place of beginning. In witness whereof, the
> grantors have set their hands this Sept. 23d 1884.

Def.'s Mot., Ex. 28.

### 6.    The Seibert Trust Claim and Davis Deed

At issue before the court is the Seibert Trust claim and not the interpretation of the
Davis Deed, which has already been interpreted to be a fee in *Memmer v. United States*.
122 Fed. Cl., 350, 362 (2015).  It is not disputed that a portion of the Seibert Trust Claim
abuts property that was conveyed by the Davis deed and that portions of the property also
abut an easement granted to the railroad.  The question before the court, as discussed

12

infra, is whether partial summary judgment on the Siebert Trust claim as to the portion that abuts the fee is proper.

### III.    Summary Judgment Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(a).  A genuine dispute is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor, and a material fact is one that could affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Cases involving only questions of law are particularly appropriate for summary judgment.  *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).

With respect to cross-motions for summary judgment, courts must evaluate each motion on its own merits and resolve reasonable inferences against the party whose motion the court is considered.  *Marriot Intern. Resorts, L.P. v. United States*, 586 F.3d 962, 968–69 (2009).

### IV.    Indiana State Law

To determine the nature of the property interests conveyed by the deeds, the court must examine the deeds in light of the common law and laws of Indiana at the time they were executed.  *Preseault,* 100 F.3d at 1543; *Clark v. CSX Transp.,* 737 N.E.2d 752, 758 (Ind. Ct. App. 2000).

At the time the deeds were executed, Indiana law provided any conveyance of lands worded in substance as follows conveyed a fee: "A.B. conveys and warrants to

C.D." [here describe the premises] "for the sum of" [here insert the consideration] "the said conveyance being dated and duly signed, sealed, and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns . . . ." Ind. Rev. Stat. ch. 23, §12 (1852) (recodified at Ind. Rev. Stat. ch. 18, §2927 (1881)). Further, "if it be the intention of the grantor to convey any lesser estate, it shall be so expressed in the deed." *Id.* at §14 (recodified at Ind. Rev. Stat. Ch. 18 § 2929 (1881)).

As the Indiana Supreme Court said in *Brown v. Penn Cent. Corp.,* 510 N.E.2d 641, 643-644 (Ind. 1987), for deeds that do not conform to the statutory language:

> There are several rules of construction to be used when construing the meaning of a particular deed. The object of deed construction is to ascertain the intent of the parties. In so doing, a deed is to be regarded in its entirety and the parts are to be construed together so that no part is rejected. Where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. . . A deed that conveys a right generally conveys only an easement. The general rule is that a conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

*Brown v. Penn Cent. Corp.,* 510 N.E.2d 641, 643-644 (Ind. 1987) (citations omitted); *Ross, Inc. v. Legler*, 199 N.E.2d 346, 348 (Ind. 1964) ("A deed, when the interest conveyed is defined or described as a 'right of way,' conveys only an easement in which title reverts to the grantor, his heirs or assigns upon the abandonment of such right of way." (citation omitted)); *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251, 256 (Ind. Ct.

14

App. 1983) (considering a deed in which the grantors "convey[ed] and quit claim[ed] . . ., for railroad purposes, the following real estate," and holding that "[r]eference to the intended use of the land indicate[d] that an easement was conveyed" because "the grantors would have no reason to specify the use if conveying a fee simple."). *But see Poznic v. Porter Cnty. Dev. Corp.,* 779 N.E.2d 1185, 1190-92 (Ind. Ct. App. 2002) (holding that a deed that conveyed to the railroad company "Forever, a strip of land for railroad purposes" conveyed a fee simple and, in so holding, declined to treat the phrase "for railroad purpose" as limiting language, noted that the deed did not include a statement indicating that the deed would be void if the strip of land was not used for railroad purposes, and remarked that the deed did not include the term "right-of-way").

"Deeds generally contain three important clauses: the granting clause, the habendum clause, and the descriptive clause."[6]  *Clark*, 737 N.E.2d at 758.  Reference to a "right-of-way" may appear in any of them.  *See, e.g., Ross, Inc.,* 199 N.E.2d at 349 (rejecting, as "an overrefinement of the rules of construction," the contention that the use of the term "right-of-way" in the descriptive clause of a deed is meaningless when the term is not included in the deed's granting clause or habendum clause, and holding that "[t]he description clause of a deed may be employed to describe the quality as well as the dimensions and quantity of the estate conveyed"); *CSX Transp., Inc. v. Rabold*, 691 N.E.2d 1275, 1278 (Ind. Ct. App. 1998) (holding that when the term "right of way" is

---

[6] The granting clause contains "[t]he words that transfers an interest in a deed or other instrument," *Black Law Dictionary* 769 (9th ed. 2009); the habendum clause is the part of a deed or other instrument "that defines the extent of the interest being granted and any conditions affecting the grant," *id.* at 788; and the descriptive clause contains "the dimensions and quantity of the state conveyed." *Ross, Inc.,* 199 N.E.2d at 349.

used in the descriptive clause "in reference to the subject matter of the deed," and the

deed does not contain the term "fee simple," the deed conveys an easement).

In addition to language expressly defining or describing the interest conveyed,

evidence of the parties' intent to convey an easement may appear in the title of the deed.

*See Clark*, 737 N.E.2d at 758 (Remarking that although "the cover and title of the

instrument" are not considered "where the granting language is clear and unambiguous[,]

. . . the title may provide additional evidence of intent where the language of the deed is

unclear"). Such evidence may also include the amount or type of consideration described

in the deed. *See Tazian v Cline*, 686 N.E.2d 95, 99 (Ind. 1997) ("When attempting to

ascertain the intent of the parties to a conveyance to a railroad, appellate courts of this

state look at the consideration paid to the grantee railroad."). However, neither the title

of the deed nor the consideration described therein conclusively establishes the

conveyance of an easement. *See Clark*, 737 N.E. 2d at 758 ("[t]he title . . . is not

dispositive of the nature of the conveyance."); *id.* at 759 ("[L]ack of consideration or

nominal consideration alone is not sufficient cause for setting aside a deed. . . .

[N]onminal monetary consideration, alone, does not make the instrument ambiguous, nor

does it create an easement.").

Finally, in construing deeds purporting to convey property interests to a railroad,

this court must recognize that:

> Public policy does not favor the conveyance of strips of land
> by simple titles to railroad companies for right-of-way
> purposes, either by deed or condemnation. This policy is
> based upon the fact that the alienation of such strips or belts
> of land from and across the primary or parent bodies of the
> land from which they are severed, is obviously not necessary

> to the purpose for which such conveyance are made after
> abandonment of the intended uses as expressed in the
> conveyance, and that thereafter such severance generally
> operates adversely to the normal and best use of all the
> property involved.  Therefore, where there is ambiguity as to
> the character of the interest or title conveyed such ambiguity
> will generally be construed in favor of the original grantors,
> their heirs and assigns.

*Ross, Inc.,* 199 N.E.2d at 348.

## V.      Discussion

As noted above in footnote 2, this case involves the same NITU that is at issue in

*Memmer v. United States*, 122 Fed. Cl., 350, 360-61 (2015).  In their briefs the parties

argue that the court should apply the same reasoning as applied in *Memmer* in deciding

whether a deed conferred an easement or fee to the railroad.  Specifically, the plaintiffs

argue that the Montgomery, Calvert, Cale, and Fairchild deeds are identical to the Type A

and Type A-1 deeds in *Memmer* that were found to convey to the railroad only an

easement.  The government, on the other hand, argues that these deeds are identical to the

second Type B deeds in *Memmer* that were found to convey a fee to the railroad.

This court finds that while the deeds at issue in these cross-motions for partial

summary judgment are similar they are not identical to the deeds at issue in *Memmer*.

Thus the court will not reference *Memmer*, but instead will apply Indiana state law to

determine whether the deeds at issue conveyed a fee or an easement to the railroad.

### A.      The Montgomery Deed Conveyed an Easement to the Railroad

The Montgomery Deed is entitled "Right of Way Deed" and states in relevant

part:

17

> Andrew Montgomery and Annie P. Montgomery of Posey
> County, State of Indiana, for and in consideration of the
> benefits to be derived from the construction of the Evansville
> & Terre Haute Railroad in Posey County, State of Indiana,
> and for the further consideration of One Hundred Dollars, in
> hand paid, …..warrant and convey to the said Evansville &
> Terre Haute Railway Company, of Indiana, its successors and
> assigns, a strip of land eighty feet in width, being a strip forty
> feet wide, on each side of the centerline of said railroad as it
> now is located through his land in Posey County, State of
> Indiana, …..said Andrew Montgomery hereby reserves all the
> timber on said right-of-way for his own use and benefit and
> that said R.R. Co. shall make one good farm crossing for the
> benefit of said Montgomery and all necessary outlets for
> water.

Pls.' Mot., Ex. C.

The court finds that the Montgomery deed granted only an easement to the railroad. Indiana law recognizes that the phrase right-of-way can be used to describe an interest or the land itself. *Clark*, 737 N.E.2d at 758; *CSX Transp., Inc.*, 691 N.E.2d at 1278. The deed uses the term "right-of-way" to mean an interest in property, which under Indiana law favors finding that an easement was granted. *CSX Transp., Inc,* 691 N.E. 2d at 1278 (holding that when the term "right-of-way" is used in the descriptive clause "in reference to the subject matter of the deed," and the deed does not contain the term "fee simple," the deed conveys an easement.). The deed is also entitled a "Right Of Way Deed" which also supports the conclusion that the grantors intended to convey only any easement to the railroad. *See Clark*, 737 N.E.2d at 758 (holding that "the title may provide additional evidence of intent where the language of the deed is unclear"). Finally, the conclusion that the grantors intended to convey an easement is consistent with the public policy addressed by the Indiana Supreme Court in *Ross, Inc.,* 199 N.E.2d

at 348, wherein the Indiana Supreme Court stated that "[p]ublic policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes, either by deed or condemnation." For all of these reasons the court finds that the Montgomery deed conveyed an easement to the railroad and thus Bender Farms may have a temporary takings claim.

**B.     The Calvert Deed Conveyed an Easement to the Railroad**

The Calvert Deed is entitled "Right of Way Deed" and states in part:

> James G. Calvert and F. M. Calvert of Posey County, State of Indiana, for and in consideration of the benefits to be derived from the construction of the Evansville & Terre Haute Railroad in Posey County, State of Indiana, and for the further consideration of One Hundred Dollars, in hand paid, …do grant, warrant and convey to the said Evansville & Terre Haute Railway Company, of Indiana, its successors and assigns, a strip of land eighty feet in width, being a strip forty feet wide, on each side of the centerline of said railroad as it now is located through his land in Posey County, State of Indiana, described as follows to wit:. . . and it is further agreed that said railroad shall make one good crossing for the use and benefit of the said James G. Calvert also all necessary outlets for water together with a good seven strand wire fence over the southside of said right-of-way.

Pls.' Mot., Ex. A.

The court finds that the Calvert deed conveyed only an easement to the railroad. Here, similar to the language in the Montgomery deed the term "right-of-way" is used to reference the interest being conveyed. In addition, the deed requires that the railroad maintain "one good crossing for the use and benefit of the [grantor,]" necessary water outlets, and erect a wire fence, all of which are restrictions which indicate an intent to convey an easement. These limitations on the railroad's use demonstrate that an

easement was granted and not a fee.  Additionally, like the Montgomery deed, this deed is also entitled a "Right Of Way Deed" which confirms the conclusion that the grantors intended to convey only any easement.  Finally, the conclusion that the grantors intended to convey an easement is consistent with the public policy addressed by the Indiana Supreme Court in *Ross, Inc.,* 199 N.E.2d at 348, as discussed above, wherein the Indiana Supreme Court stated that "[p]ublic policy does not favor the conveyance of strips of land by simple titles to railroad companies for right-of-way purposes, either by deed or condemnation."  For all of these reasons the court finds that the Calvert deed conveyed an easement to the railroad and thus Lockwood Farms has a potential temporary takings claim.

**C.     The Cale Deed Conveyed an Easement to the Railroad**

The Cale Deed is entitled "Right of Way Deed" and states in part:

> Know all men by these presents that James Cale and Jane Cale of Posey County, State of Indiana, for and in consideration of the benefits to be derived from the construction of the Evansville & Terre Haute Railroad in Posey County, State of Indiana, and for the further consideration of One Hundred and Fifty Dollars, in hand paid, the receipt of which is hereby acknowledged, do grant, warrant and convey to the said Evansville & Terre Haute Railway Company, of Indiana, its successors and assigns, a strip of land sixty-six feet in width, being a strip thirty-three feet wide, on each side of the centerline of said railroad as it now is located through his land in Posey County, State of Indiana, described as follows to wit: being a strip thirty-three feet wide, over the east side of the centerline of the right-of way as shown by the survey made by said company through the NE quarter of Section 19 Township 4 Range 12 west from the point where said survey strikes the north line of said land to the land owned by E. E. Fairchild and a strip on the west side of said centerline commencing at the said north line of the above named quarter and Section. Thirty-three feet wide

> for a distance of 19 rods south from thence a strip 47 feet
> wide for a distance of one hundred feet south and from thence
> to the land owned by said E.E. Fairchild a strip thirty-three
> feet wide.

Pls.' Mot., Ex. D.

The court finds that the language of the Cale deed viewed as a whole weighs in favor of finding that an easement was granted. The use of the term "right-of-way" in the title and body of the deed weigh in favor of finding that the deed conveyed an easement. Although there is no other limiting language either with regard to rights retained by the grantor or limiting the use of the land to railroad purposes, the court finds that where the parties use right-of-way in the title and body of the deed the public policy as outlined by the Indiana Supreme Court in *Ross, Inc.,* 199 N.E.2d at 348, requires that the court find that an easement was granted. *See also Brown,* 510 N.E.2d at 643-644 ("reference to a right-of-way in … a conveyance generally leads to its construction as conveying only an easement."). To the extent the government contends that without limiting railroad purpose language the deed is ambiguous the Indiana Supreme Court has found "where there is ambiguity as to the character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs and assigns." *Ross, Inc.*, 199 N.E.2d at 348. For all of these reasons the court finds that the Cale deed conveyed an easement to the railroad and thus Riley has a potential temporary takings claim.

### D.     The Fairchild Deed Conveyed an Easement to the Railroad

The Fairchild Deed is entitled "Right of Way Deed" and states in part:

> E. E. Fairchild, S.S. Fairchild, his wife and F.N. Fairchild and
> Mary Fairchild, his wife, of Posey County, State of Indiana,
> for and in consideration of the benefits to be derived from the
> construction of the Evansville & Terre Haute Railroad in
> Posey County, State of Indiana, and for the further
> consideration of Two Hundred Dollars, in hand paid, the
> receipt of which is hereby acknowledged, do grant, warrant,
> and convey to the said Evansville & Terre Haute Railway
> Company, of Indiana, ….. a strip of land sixty-six feet in
> width, being a strip thirty-three feet wide, on each side of the
> center of said right-of-way of said railroad as it now is located
> through his land in Posey County, State of Indiana, described
> as follows to wit: ….. running thence north 26 rods or
> thereabouts thence south 13 rods or thereabouts, thence in a
> southeasterly direction along the line of the right-of-way of
> said P.D. & E.R.R. to the place of beginning containing three
> acres and fifty four rods more or less.

Pls.' Mot., Ex. B.

The court finds that the language of the Fairchild deed similar to the Cale deed when viewed as a whole weighs in favor of finding that an easement was granted. Here as well, the term "right-of-way" is used in the title and body of the deed this weighs in favor of finding that the deed conveys an easement. Although there is no other limiting language either with regard to rights retained by the grantor or limiting the use of the land to railroad purposes, the court finds that where the parties use right-of-way in the title and body of the deed the public policy as outlined by the Indiana Supreme Court in *Ross, Inc.,* 199 N.E.2d at 348, requires that the court find that an easement was granted. *See also Brown,* 510 N.E.2d at 643-644 ("reference to a right-of-way in … a conveyance generally leads to its construction as conveying only an easement."). To the extent the government contends that without limiting railroad purpose language the deed is ambiguous the Indiana Supreme Court has found "where there is ambiguity as to the

22

character of the interest or title conveyed such ambiguity will generally be construed in favor of the original grantors, their heirs and assigns." *Ross, Inc.*, 199 N.E.2d at 348. For all of these reasons the court finds that the Fairchild deed conveyed an easement to the railroad and thus Janet Shapker has a potential temporary takings claim.

> **E.    The Williams Deed Conveyed Land That Was Adjacent to the Effinger Estate in Fee Simple to the Railway Company**

In addition to the parties' dispute regarding whether certain deeds conveyed an easement or fee to the railroad, the parties also dispute the location of the property conveyed by the Williams deed to the railroad and whether it is adjacent to the Effinger Estate. For the reasons that follow, the court concludes that Effinger Estate's property is adjacent to the fifth parcel of the Williams Enlargement, which is the same as "Lot No. Five (5) Williams First Addition" and is adjacent to property that was conveyed to the railroad in fee.

The dispute concerns the location of Lot No. 5 based on several maps and deeds that date from the late 1880s. The government contends that it is clear from maps dating from 1884 that the Effinger Estate is adjacent to the land described by the Williams deed as Lot No. 5 of "Williams First Addition," which is the same parcel described in the Town of Poseyville's geographic information system ("GIS") map as the Williams Enlargement. Def.'s Reply, Exs. 1 and 1.A. The government argues that the subject parcel on the GIS map is bounded in the north by Second Street and in the south by South Street, which is the same description as the description in the 1884 Williams deed and is the property adjacent to the Effinger Estate. Def.'s Reply, Ex. 1.A. The government further argues that this understanding of the location of Williams' First Addition and

where Lot No. 5 is located is also supported by the Platt of Williams Second Addition to Poseyville dated December 30, 1882 and the Platt of Williams Third Addition to Poseyville dated February 3, 1886.  Def.'s Reply, Exs. 3 and 4.

The plaintiffs assert that rather than rely on the GIS map, the court should rely on the ICC Valuation Map 5 of Valuation Section 40 and the Valuation Schedule, which according to plaintiffs shows that Lot No. 5 is not bounded in the north by Second Street and in the south by South Street, but is instead located between Dean and South Streets and is thus not adjacent to the Effinger Estate.  Pls.' Resp. Ex. A and B.

The court finds that the government's reading of the deed is correct.  A review of the instrument that established Williams First Addition as well as the instruments that established Williams Second and Third Additions show that Williams First Addition is bounded in the north by Second Street and in the south by South Street.  *See*, Ex. 29, Def.'s Resp. Ex. 3 and 4.  Thus the GIS map's "Williams Enlargement" is the same parcel of land that is referenced in other documents signed by LeRoy Williams as "Williams First Addition."  Furthermore, the property location suggested by the plaintiffs does not match the dimensions described in the Williams deed.  Specifically the property that the plaintiffs are referencing only measures 66 feet in length from north to south according to the ICC Valuation Map 5 of Valuation Section 40, while the Williams deed describes an area that runs 132 feet north to south.  *See,* Pls. Reply, Ex. B.  As such, the Effinger Estate property is adjacent to a portion of the right-of-way that was deeded to the railroad company in fee simple and the plaintiffs cannot proceed with a potential temporary takings claim.

### F.      Partial Summary Judgment on the Seibert Trust is Not Premature

The Seibert Trust claims a potential temporary taking for a portion of property that was not conveyed in fee to the railroad, but acknowledges that another portion of its property was conveyed in fee to the railroad.  The government asks the court to enter partial summary judgment stating that the property conveyed in the Davis deed is adjacent to Seibert Trust's property was conveyed in fee and that Seibert Trust cannot proceed with a temporary takings claim for that portion.  *See* fn. 5.  The plaintiffs do not disagree that the Siebert Trust claim is limited but argue that partial summary judgment is premature "because the [government] has failed to provide any measurements as to the size of the areas of the corridor that were acquired in fee simple or easement."  Pls.' Resp at 2.

The court disagrees with plaintiffs.  In the next phase of the case they will need to establish the property interest that the Seibert Trust contends gives rise to a temporary taking.  Because the burden will be on the plaintiffs to show the precise boundaries of their property interest to establish a taking and not the government, partial summary judgment is not premature.  For purposes of this motion the precise boundaries need not be set.  It is enough to show that the portion is owned by the railroad in fee and as matter of law cannot be the basis of a temporary takings claim.

## CONCLUSION

For the foregoing reasons the government's motion for partial summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART** and the plaintiffs' cross-motion for summary judgment is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties

shall have until **September 28, 2018**, to file a proposed schedule for resolving the remaining issues in this case.  The court will thereafter schedule a status conference to finalize the parties' next steps.

**IT IS SO ORDERED**.

<u>s/Nancy B. Firestone</u>
NANCY B. FIRESTONE
Senior Judge